PEOPLE OF the STATE OF CALIFORNIA and the Public Utilities Commission of the State of California, Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,

National Association of Broadcasters, Intervenor.

No. 85–1112.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 24, 1986.

Decided Aug. 22, 1986.

**1516**

Ellen S. LeVine, with whom J. Calvin Simpson, San Francisco, Cal., was on brief, for petitioners. Gretchen Dumas, San Francisco, Cal., also entered an appearance for petitioners.

John E. Ingle, Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Roberta L. Cook, and Jane E. Mago, Counsel, F.C.C. and Robert B. Nicholson and Robert J. Wiggers, Attys., U.S. Dept. of Justice, Washington, D.C., were on brief, for respondents.

Mania K. Baghdadi, with whom Henry L. Baumann, Barry D. Umansky, Julian L. Shepard, and Thomas Schattenfield, Washington, D.C. were on brief, for intervenors.

Before BORK and BUCKLEY, Circuit Judges, and WRIGHT, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Domestic radio common carrier services are regulated under two separate headings within the Communications Act of 1934 ("the Act"). First, because such services are carried on radio waves, they come within Title III of the Act, which grants the Federal Communications Commission ("FCC" or "Commission") broad regulatory authority over radio transmission, whether interstate or intrastate. Second, because these are common carrier communications services, they also come within Title II of the Act, which grants the FCC authority over *interstate* communication. Regulation of *intrastate* common carriage (i.e., jurisdiction over charges, classifications, practices, services, facilities, and regulations generally) is reserved to the states. This case involves *intrastate radio* common carrier services, and presents the issue whether the Commission's Title III authority over the radio transmission aspects of such services can supersede the states' authority over their intrastate common carriage aspects.

Petitioners appeal an FCC order which, under claim of Title III authority, preempts state regulation of purely intrastate radio common carrier services provided on FM subcarrier frequencies, to the extent that such state regulation blocks or impedes entry of such services. For the reasons discussed below, we find that Title III does not authorize FCC preemption of state regulations governing intrastate radio common carriage. Because the Commission has exceeded its statutory authority, we reverse its Order insofar as it seeks preemption of state regulation of intrastate radio common carriage.

## I.

The Communications Act of 1934 created the FCC with a mandate "to make avail-

able, so far as possible to all the people of the United States a rapid, efficient, Nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. To accomplish this goal, the Act divides regulatory jurisdiction between federal and state authorities.

Under 47 U.S.C. § 152(a), the FCC's jurisdiction extends "to all *interstate* and foreign communication by wire or radio ... and to all persons engaged within the United States in such communication ... and to the licensing and regulating of all radio stations." (Emphasis added.) On the other hand, 47 U.S.C. § 152(b) reserves to the states jurisdiction over "charges, classifications, practices, services, facilities, or regulations for or in connection with *intrastate* communication service by wire or radio of any carrier." (Emphasis added.)

The reservation of state regulatory authority over intrastate communication is, however, made "[s]ubject to the provisions of [47 U.S.C.] section 301," *id.*, which directs the Commission "to maintain the control of the United States over all the channels of radio transmission." Section 301 also provides that "[n]o person shall use or operate any apparatus for the [intrastate, interstate, or foreign] transmission of energy or communications or signals by radio ... except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter."

The states' authority over intrastate communication under section 152(b) is thus limited by the FCC's general jurisdiction over radio transmission under section 301. The essential dispute in this case concerns the scope of this limitation.

## II.

The radio spectrum segment allotted to an FM licensee can be subdivided into a main channel and a number of "subchannels" or "subcarriers." Since 1960, FCC rules have allowed only broadcast services to be provided on such FM subchannels. Thus an FM licensee has not been allowed to use subchannels for common carrier services. In 1982, however, in accordance with its mandate to "[s]tudy new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest," 47 U.S.C. § 303(g), the Commission initiated a rulemaking proceeding to consider eliminating restrictions on the use of FM subchannels. In its *First Report and Order*, 48 Fed.Reg. 28445, 53 Rad.Reg.2d (P & F) 1519 (published June 23, 1983), the Commission amended its rules to allow common carriage and other nonbroadcast services on FM subchannels.

Following the release of this *First Report and Order*, a number of parties filed Petitions for Reconsideration, complaining that even after a would-be radio common carrier has been licensed by the FCC, state regulations often impede actual entry. The petitions requested that the FCC preempt such state regulation of radio common carriage. In response to these petitions, the Commission released a *Memorandum Opinion and Order*, 49 Fed.Reg. 19659, 55 Rad.Reg.2d (P & F) 1607 (published May 9, 1984) (*"Reconsideration Order"*), in which it "preempt[ed] state regulation that has the effect of prohibiting or impeding entry of radio common carrier services operating on FM subcarriers." *Id.* at ¶ 2. The Commission subsequently denied a motion to reconsider this preemption order, *Memorandum Opinion and Order*, FCC 84–531, 57 Rad.Reg.2d (P & F) 1683 (1985) (*"Further Reconsideration Order"*).

In its *Reconsideration Order*, the Commission recognized two categories of radio common carriage, and employed distinct rationales to justify preempting the regulation of each. First, the Commission dealt with common carriage services which form a component of an *interstate* communication system. The Commission reasoned that state entry regulation of such services might burden interstate communication. *Id.* at ¶ 20. The FCC's authority to preempt state regulation of such services arises from its jurisdiction over interstate

communication under section 152(a) and is not challenged here.

The Commission went on, however, to assert its authority to preempt state regulation of purely local radio common carriage services. *Id.* at ¶¶ 21 *et seq.* Apparently recognizing that such preemption cannot be justified by its authority over interstate communication, the Commission relied instead on its authority under section 301 to "maintain the control ... over all the channels of radio transmission." As FCC counsel noted at oral argument, this is the first time the Commission has relied on its general authority over radio transmission under Title III of the Act in order to restrict state regulation of purely intrastate communication. The adequacy of Title III to support such preemption is an issue which we expressly reserved in *Nat'l Ass'n of Regulatory Utility Com'rs v. FCC*, 525 F.2d 630, 646 (D.C.Cir.1976), and is the central question presented for resolution here.

### III.

The Commission found that state regulations frustrate its Title III mandate in three respects. First, state regulation often conflicts with a Commission decision to license a radio transmitter. 47 U.S.C. § 307(a) directs that the Commission, "if public convenience, interest, or necessity will be served thereby, ... shall grant to any applicant therefor a station license provided for by this chapter." In accordance with this statutory directive, the Commission grants radio licenses only upon a finding that licensing the proposed service will serve the public interest. State regulations that prevent or delay the entry of an FCC licensee conflict with the Commission's determination of the public interest. *Reconsideration Order* at ¶ 21.

Second, state regulations may restrict the beneficial utilization of the radio spectrum. The Commission has interpreted its section 301 mandate as an authorization to allocate the Nation's scarce radio spectrum resources and, therefore, to ensure that the additional spectrum made available

through the liberalization of FM subchannel rules not be wasted. State regulations which impede entry frustrate the Commission's efforts to facilitate the utilization of the electromagnetic spectrum. *Id.* at ¶ 22.

Finally, state regulations may hinder the Commission's efforts to introduce healthy competition into radio transmission industries. In conjunction with its duties to license transmitters and allocate the spectrum, the Commission has developed strongly pro-competitive policies. State regulations, however, are often expressly designed to shield existing common carriers from having to compete with new entrants, thus frustrating the FCC's efforts to encourage competition. *Id.* at ¶ 23.

The Commission makes a persuasive case in support of its policy objective, but that case must be made to Congress and not to this court. The structure and legislative history of the Communications Act compel the conclusion that the Commission has here overstepped its statutory authority. The Act commits regulation of the common carrier aspects of intrastate radio transmission to the states. That such regulation impedes entry may well be an unfortunate consequence of Congress' division of regulatory jurisdiction between federal and state authorities, but only Congress may change that division of authority.

### IV.

The appropriate resolution of this case is suggested in *Louisiana Public Service Commission v. FCC*, —— U.S. ——, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). There, as in the instant case, the FCC attempted to preempt an element of state regulation of intrastate communication. The Supreme Court held this preemption barred by section 152(b)'s allocation of intrastate ratemaking authority to the states.

State utility commissions set intrastate telephone rates so as to allow telephone companies to recover their operating expenses and a reasonable return on investment. The calculation of both operating expenses and investment are significantly affected by the method of depreciating

telephone plant and equipment. The depreciation methods used thus have an impact on intrastate telephone rates. The FCC, in reliance on its authority under 47 U.S.C. § 220 to define depreciation methods, and its mandate under section 151 to make available a "rapid, efficient, Nation-wide" communication system, sought to prescribe the depreciation method to be used by the state commissions in setting rates for intrastate telephone service.

The Supreme Court reversed the FCC, reasoning that "an agency literally has no power to act, let alone preempt the validly enacted legislation of a sovereign state, unless and until Congress confers power upon it." *Id.* at 1901. The Court held that section 152(b) constitutes "a congressional *denial* of power to the FCC," *id.*, which "fences off from FCC reach or regulation intrastate matters—indeed, including matters 'in connection with' intrastate service." *Id.* at 1899. The Act creates "a *dual* regulatory system," (emphasis in original), *id.*, allocating jurisdiction between federal and state authorities, which the FCC may not subvert by inflating its authority under sections 220 and 151 at the expense of the states' authority under section 152(b). "[O]nly Congress can rewrite this statute." *Id.* at 1902.

In the instant case the FCC would preempt "state regulations that have the effect of prohibiting or impeding entry." *Further Reconsideration Order* at ¶ 16. To justify such a preemption, despite the reservation to the states under section 152(b) of authority to make "regulations for or in connection with intrastate communication service by . . . radio," the FCC relies on the language making that section "[s]ubject to the provisions of section 301." As the statutory scheme and legislative history make clear, however, this residuum of FCC authority under section 301 is much more limited than the Commission suggests.

### A.

Section 152(b) reserves to the states authority to regulate intrastate wire or radio common carrier services. At the same time, the section is made subject to section 301, which grants the FCC authority over radio transmission. The obvious intent of this scheme is to divide the jurisdiction over intrastate radio common carriage services between state and federal authorities. States retain authority over the common carriage aspects of such services, while the FCC is authorized to regulate the radio transmission aspects. Section 301 does not empower the Commission to subvert this scheme by expanding its own authority at the expense of the states'.

The FCC represents that its action is "measured," *Reconsideration Order* at ¶ 2, and that it is preempting only so much of state regulation as impedes entry, but will leave other aspects of state common carrier regulation untouched. *Id.* at ¶ 26 n. 24, & ¶ 28 n. 31. This asserted restraint, however, seems belied by the logic of the Commission's arguments. The rationales by which the Commission would justify this preemption prove too much, suggesting a wholesale displacement of state regulation.

*Any* state regulation of radio common carriage might in some respect burden entry. Moreover, any and all state regulation might trigger the three rationales by which the FCC would justify preemption of additional areas of state authority; i.e. conflict with the Commission's licensing determination, frustration of beneficial use of spectrum resources, or impediment to the introduction of competition into radio communication industries. The Commission's logic would thus prepare the way for the complete elimination of any state role in the regulation of intrastate radio common carriage. Yet, such a result would reduce section 152(b) to a nullity, violating the congressional intent to establish a system of dual regulatory control, *Louisiana Public Service Commission*, 106 S.Ct. at 1899, and to "fence[ ] off from FCC reach or regulation intrastate matters." *Id.*

### B.

The legislative history of the Act further supports the conclusion that the FCC has

overstepped its legitimate authority. In 1954, Congress amended section 152(b) "to make certain that the use of radio will not subject to Federal regulation companies engaged primarily in intrastate operations." H.R.Rep. No. 910, 83d Cong., 1st Sess. 1 (1953), U.S.Code Cong. & Admin.News 1954, 2133. The Commission's attempted preemption would subject intrastate common carrier services to federal control on the sole basis that they utilize radio signals. This result is precisely what Congress sought to foreclose with the 1954 amendment.

Also instructive is the simultaneous 1954 amendment of 47 U.S.C. § 221(b). That section was amended to ensure that local telephone exchange services would not be subjected to federal regulation simply because they incorporated radio services. In comments to the House committee, the Commission successfully argued that the statute also be made "subject to the provisions of section 301."

> Such a provision, which is presently included in section [152(b)] of the act, is desirable in order to avoid any implication that the radio stations to which the section would have reference, would not be subject to the general radio regulatory provisions of title III of the act. The possibility that such radio operations, left unregulated, would cause destructive interference with other interstate radio operations makes essential that this Commission retain jurisdiction over the noncommon carrier regulatory aspects of the radio stations involved.

*Id.* at 5. Thus, the Commission interpreted the phrase borrowed from section 152(b)— "subject to the provisions of section 301"— as allowing FCC control only of the technical, non-common-carrier regulatory aspects of radio transmission, *e.g.*, prevention of destructive interference. The Commission's interpretation bolsters our own conclusion that the phrase will not support the present effort to preempt state regulation of the common carrier aspects of intrastate radio communication.

## V.

It is true that Title III of the Act gives the FCC regulatory authority over more than the technical and engineering aspects of radio transmission. As the Supreme Court held in *National Broadcasting Co. v. United States,* 319 U.S. 190, 215, 63 S.Ct. 997, 1009, 87 L.Ed. 1344 (1942), the Commission is not merely "a kind of traffic officer, policing the wave lengths to prevent stations from interfering with each other," but in addition may take public interest considerations into account in deciding whether to grant broadcast licenses. Nevertheless, whatever the extent of the Commission's Title III authority, it is limited to the *non*-common carrier aspects of intrastate radio communication. The unavoidable conclusion from the structure and legislative history of the Act is that section 301 does not authorize the Commission to preempt state regulation of intrastate radio common carriage merely because these regulations may frustrate the entry of FCC licensees.

Whatever the merit of the Commission's policy arguments for unimpeded entry and free market competition in order to facilitate the beneficial utilization of scarce spectrum resources, the attempted preemption of state regulation in this case contravenes section 152(b). Public interest considerations may well favor changing the present rules and allowing more complete FCC control over intrastate radio common carriage. This decision, however, must be made by Congress, not by the FCC, and not by the courts.

For the reasons stated above, the Commission's *Further Reconsideration Order* is reversed insofar as it seeks to preempt state regulation of purely intrastate radio common carriage.

*It is so ordered.*